MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

HALLIE M. HOFFMAN (CABN 210020)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7129
    FAX: (415) 436-7234
    hallie.hoffman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 14-295 TEH |
|     Plaintiff, ) | |
|     v. ) | UNITED STATES' SENTENCING MEMORANDUM |
| ROBERT BRADLEY STRAHAN, ) a/k/a Robin Bradley, ) a/k/a Kaola Bradley Strahan, ) | Date: February 9, 2015 Time: 2:30 p.m. |
|     Defendant. ) | |

**I.    Introduction**

On May 29, 2014, the defendant was indicted with three counts of Wire Fraud, in violation of 18 U.S.C. §1343 and two counts of Mail Fraud, in violation of 18 U.S.C. §1341. On August 7, 2014, a Superseding Indictment was returned against the defendant that added two counts of Tax Evasion, in violation of 26 U.S.C. §7201. On November 30, 2014, the defendant entered a plea before Your Honor, under Rule 11(c)(1)(C), to Wire Fraud (Counts One and Two), Mail Fraud (Count Four) and Tax Evasion (Count Seven). The parties agreed that an appropriate sentence would be a term of imprisonment within the range associated with offense level 20 and the defendant's criminal history

1

level as determined by the Court, restitution in the amount of $928,000, no fine, and a three-year term of supervised release.  In its Probation Sentencing Report for the defendant (" PSR"), the Probation Department ("Probation") calculated the defendant's total offense level to be 21 and criminal history to be category IV, resulting in a prison sentence range of 57-71 months, restitution in the amount of $1,105,481, no fine, and a three-year term of supervised release.  PSR, Sentencing Recommendation.

The United States believes that the appropriate guideline offense level is 20, resulting in a prison sentence range of 51-63 months.  For the reasons set forth herein, the United States respectfully requests that the Court impose a sentence of 60 months in prison, restitution in the amount of $928,000, no fine, and a three-year term of supervised release.

**II.     Summary of Pertinent Evidence**

From approximately December 2007 through April 28, 2014, the defendant worked at a non-profit trade association ("M.E."), in San Francisco, California, first as a contractor and eventually as the chief financial officer. His job duties included bookkeeping, payroll, and accounting.  As such, the defendant had complete control over and access to M.E.'s books and records and bank accounts.  He established passwords and login identifications to M.E.'s bank accounts online, and transferred M.E.'s accounting to QuickBooks to which he exclusively had access. *See* PSR, ¶6.

The defendant was not authorized to sign checks.  However, beginning in 2009, the defendant prepared, signed, endorsed and cashed checks totaling approximately $551,511 from M.E.'s bank accounts.  *See* PSR, ¶7; Plea Agreement (PA), p.4, lines17-19.  To conceal the money that that the defendant took from M.E., he made false entries in M.E.'s accounting systems that the checks were for the purpose of "Advance," "Expense Reimbursement," "Travel Advance," "Quarterly Bonus," "Petty Cash," "Temp help," "Bonus/Temp help," when he had actually cashed the checks and taken the money for his personal use.  *See* PA, p.4, line 26 – p.5, line 3.

The defendant also had two M.E. credit cards that he was not authorized to use for personal expenses.  However, the defendant used M.E.'s credit cards to make unauthorized purchases totaling approximately $257,638. Specifically, on April 21, 2014, the defendant caused personal items that he had purchased with a M.E. credit card to be sent through the mail. *See* PSR; ¶7, PA, p.4, lines 19-22.

Moreover, the defendant gave an associate $118,986 from M.E.'s bank account, but that associated had not done work warranting the payment. *See* PSR, ¶7; PA, p.4, lines 22-25.

As chief financial officer, the defendant was responsible for providing financial statements to M.E.'s board members. In order to conceal the money that the defendant was stealing from M.E., and to continue his fraud scheme, the defendant emailed false financial statements to the M.E. Board of Directors omitting the funds that he was embezzling from M.E. Specifically, on September 14, 2012, and December 16, 2013, the defendant sent the false final statements to board member via email. He sent the emails from his M.E. email account, which utilized a server in San Francisco, California, to a M.E. board member's email account which used a server located in Virginia. *See* PSR ¶8; PA, p. 4, lines 11-16 and p.5 at 3-7.

Finally, the defendant did not pay income taxes on any of the money that he embezzled from M.E. for the calendar years 2009, 2010, 2011, 2012, and 2013. *See* PSR ¶9, PA, p.5, lines 8-16.

**II.    Guidelines Calculation**

The parties and Probation agree that the applicable guideline computation for Counts One, Two, and Four is the following:

|  | **U.S.S.G. Section** | **Level/Points** |
| --- | --- | --- |
| Base Offense level | 2B1.1 | 7 |
| Specific Offense Characteristics | 2B1.1(b)(1)(J) (loss amount more than $400,000 but less than $1M) | +14 |
| Role in the Offense | 3B1.3 (abuse of a position of trust) | +2 |
| Total Offense Level |  | 23 |

Further, the parties believe that the offenses should group – the substantive mail fraud and wire fraud counts should group with the tax evasion counts. PSR, Addendum. The result would be the following:

|  | **U.S.S.G. Section** | **Level/Points** |
| --- | --- | --- |
| Total Offense Level |  | 23 |

3

| Acceptance of Responsibility | 3E1.1(a) & (b) | -3 |
|---|---|---|
|  |  | 20 |
| Criminal History Category |  | IV |
| **RANGE** |  | **51-63** |

However, Probation does not agree with the parties that Count 7 (Tax Evasion) should be grouped with the other counts. The result of Probation's approach would be an offense level of 21 instead of 20. Respectfully, the government disagrees.

The government and the defense entered into a thoroughly negotiated, binding, plea agreement to offense level 20. Given the particular facts of *this specific ca*se, the government concluded that the tax count (Count 7) would group with the fraud counts. The guideline that covers grouping different offenses explicitly states that "[o]ffenses covered by the following guidelines are to be grouped under this subsection;" both U.S.S.G. § 2B1.1 (the guideline that covers the fraud counts) and 2T1.1 (the guideline that covers the tax count) are listed. *See* U.S.S.G. §3D1.2(d). Moreover, in this particular case, the counts should group because the counts involve (1) the defendant's same fraudulent conduct and objective, (2) overlapping victims, and (3) conduct that occurred over the same time period. *See* U.S.S.G. §3D1.2(b) & (c). First, the multiple charged offenses involved some of the defendant's same fraudulent conduct and objective. The defendant's failure to pay taxes on the money that he embezzled, concealed his ongoing illegal activity and allowed him to continue to perpetrate his fraud. Second, while there are different victims (as indicated in the PSR), there are also overlapping victims. By concealing the money he had already stolen from M.E. and not paying taxes on that money, he was able to continue his embezzlement scheme and steal more money from the M.E. Thus the tax count and the fraud counts have an overlapping victim in M.E. Third, the conduct occurred over the same time period. The defendant pleaded guilty to willfully evading paying the income tax that he owed for the calendar year 2010, filed in April 2011. The timing of that tax evasion was in the middle of his fraud scheme, which occurred from approximately 2009 through April, 2014. Finally, the money that the defendant concealed from his taxes, is the very same illegally obtained money that the defendant was embezzling during his fraud scheme and that serves as the sentencing enhancement for the fraud offenses (increase based on loss amount). *See United States v. Narum*, 577 Fed.Appx. 689, 691 (9th Cir. 2014); U.S.S.G.

§3D1.2(c).

## III. Sentencing Recommendation

The parties agree that a reasonable and appropriate sentence for the defendant is one that falls within the guideline range associated with an offense level 20 and the criminal history category as determined by the Court. If the Court agrees with Probation's criminal history calculation for the defendant, the defendant is a criminal history category IV. Thus, the resulting guideline range is 51-63 months. The government asks the Court to impose a sentence in the upper end of that range.

The government has carefully considered sentencing factors under 18 U.S.C. § 3553(a). First, under 18 U.S.C. § 3553(a)(2)(A), the court must consider the need for the sentence imposed "to reflect the seriousness of the offense" and "to provide just punishment for the offense." The government considers the crime of embezzling money from a non-profit company to be a very serious crime. The amount the defendant stole from M.E., impacted M.E's ability to carry out its mission. As the non-profit victim wrote in its victim impact statement, "[w]e are a very small non-profit maritime trade association, founded in 1849. These losses have had a huge impact of our future sustainability and have adversely impacted our credibility within our stakeholder community."

Second, under 18 U.S.C. § 3553(a)(2)(B), the court must consider the need for the sentence "to afford adequate deterrence to criminal conduct." Both general and specific deterrence are significant sentencing factors in this case. All employers, from large companies to individuals, place great trust in their employees. That relationship is necessary in order to have a functional work environment; the trust relationship is only increased where the employee has access to the financial books and records of an employer. Moreover, a trusting relationship is further heightened in the non-profit area where funds are limited thus often there cannot not be as much oversight of the financial officer's management of the company's funds. Additionally, betraying the trust is more than a financial loss to the employer. The victim in this case refers to it as an "assault." A significant sentence is needed to discourage others from embezzling money from his or her employers. Such a sentence is necessary to show that there are real consequences of taking advantage of that trusted position.

Third, specific deterrence is a significant sentencing factor in this case. *See* 18 U.S.C. § 3553(a)(2)(C). The defendant embezzled money from other employers prior to committing the present

offense. As a result, he served two prison sentences for similar theft conduct. He committed the present offense while on parole from one of those convictions. PSR, ¶s 40, 41. A serious sentence needs to be imposed to protect the public and ensure the defendant will not continue to prey on others.

The government has carefully weighed the sentencing factors discussed by probation with the aforementioned sentencing factors of needing a sentence that affords adequate deterrence and a sentence that reflects the seriousness of the crime and provides just punishment. After careful analysis, the government believes that a sentence of incarceration of 60 months (where the guidelines are 51-63 months) is appropriate.

**IV.  Restitution**

The parties agreed that restitution to the Marine Exchange should be $928,000. The government stands by that agreement.

**V.  Conclusion**

For the reasons set forth herein, the United States respectfully requests that the Court impose a sentence of 60 months in prison, restitution in the amount of $928,000, no fine, and a three-year term of supervised release.

DATED: January 26, 2015                    Respectfully submitted,

                                           MELINDA HAAG
                                           United States Attorney


                                           _____/s/_____
                                           HALLIE MITCHELL HOFFMAN
                                           Assistant United States Attorney